[Civ. No. 13331.   First Dist., Div. Two.   Sept. 10, 1947.]

Estate of JOSEPHINE FRANCES POWERS, Deceased. JOSEPH WHALEN McMAHON, Appellant, v. ALEX-ANDER McCULLOCH et al., Respondents.

Robert E. Hatch for Appellant.

George K. Ford, Simpson Finnell, Charles R. Collins, Tobin & Tobin and Frank J. Fontes for Respondents.

DOOLING, J.—This is an appeal from an order refusing to revoke the probate of the last will of Josephine F. Powers, notwithstanding the verdict of a jury that the testatrix was not competent to make the will. The question presented is whether as a matter of law there was no substantial evidence to support the jury's finding that the testatrix lacked testamentary capacity, since concededly the court cannot in such

a case make an order notwithstanding the verdict if there is substantial evidence to support the jury's finding.

The testatrix consulted an attorney about making this will at a time when there is no dispute as to her testamentary capacity and the will in question was drawn in accordance with her directions given at that time. It was not immediately executed because of her supervening illness which ultimately led to her death. On May 16, 1943, the testatrix was taken to the San Francisco Emergency Hospital and from there removed to the San Francisco Hospital where she remained until June 12. On that date she was transferred to St. Mary's Hospital, also in San Francisco. On June 18, the will in question was executed at St. Mary's Hospital and the testatrix continued as a patient in that hospital until her death on July 20. The immediate cause of her hospitalization was traumatic injury and collapse from a fall but she was also suffering from a cancerous condition in an advanced stage. The records of the two hospitals were admitted in evidence. That of the San Francisco Hospital contains entries indicating such varying mental states as that she was in a confused mental state on her admittance, later unconscious, not totally clear mentally, improving, irrational to a slight extent at times, rational but very fretful and restless. The entries as to her mental condition at St. Mary's Hospital likewise indicate that prior to June 18 (the date of the will's execution), she was at times confused, speaking very loudly and incoherently, very irrational, not quite so depressed and confused, irrational at times, hysterical. Coming to June 17, the day before the will's execution, the following entries appear: "12 noon. Confused, irrational at times." "4 in the afternoon . . . Very depressed. Sleeps at 15 and 20 minute intervals." "9 o'clock, crying account severe pain. 10 o'clock . . . Condition same. Fair day." On June 18, there is no entry with reference to her mental condition.

We cannot agree with appellant that the entries on the hospital charts constitute substantial evidence that the testatrix did not possess testamentary capacity on June 18. The critical inquiry is directed to the condition of the testatrix' mind at the very time of the execution of the will (*Estate of Sexton*, 199 Cal. 759, 765 [251 P. 778] ; *Estate of Perkins*, 195 Cal. 699, 706-7 [235 P. 45] ; *Estate of Dupont*, 60 Cal.App.2d 276, 286 [140 P.2d 866]) and there is a pre-

sumption of testamentary capacity which requires substantial evidence to overcome (*Estate of Arnold,* 16 Cal.2d 573, 586-7 [107 P.2d 25] ; *Estate of Perkins, supra,* 195 Cal. 699, 703; *Estate of Sexton, supra,* 199 Cal. 759, 766). The most that can be said for the hospital records is that they show intermittent periods of mental confusion and irrationality and as we approach the critical date of June 18, we find that the record shows on June 17 "Confused, irrational at times," which carries the clear implication that the testatrix was only intermittently confused and irrational on that date, and on June 18, there is a complete absence of any entry which would tend in the slightest to prove that the testatrix lacked testamentary capacity on that day.

▮ After her admission to the San Francisco Hospital and on May 26, the superior court adjudged the testatrix to be incompetent and appointed a guardian. It is claimed that this adjudication is prima facie evidence of her subsequent incompetency to make a will. In support of this argument, *Estate of Johnson,* 200 Cal. 299 [252 P. 1049] is cited. The opinion in that case holds to the exact contrary. After saying on page 303 that an adjudication of *insanity* raises a presumption of want of testamentary capacity on the date of the adjudication, the Supreme Court says of an adjudication of incompetency on page 305: "Proof of incompetency in a guardianship proceeding is evidence of mental condition on the date of the adjudication but it is not *prima facie* evidence of testamentary incapacity so as to shift the burden of proof to the proponent of the will."

The reason for this holding seems obvious. A guardian may be appointed for "any person, whether insane or not, who by reason of old age, disease, weakness of mind, or other cause, is unable, unassisted, properly to manage and take care of himself or his property, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons." (Prob. Code, § 1460.) All that such an adjudication can judicially establish is the existence of a state of facts falling within the quoted definition, but the establishment of such facts would fall short of proving testamentary incapacity. ▮ It is thoroughly established by a series of decisions that: "Ability to transact important business, or even ordinary business, is not the legal standard of testamentary capacity. . . ." (*Estate of Arnold, supra,* 16 Cal.2d 573,

586; *Estate of Sexton, supra,* 199 Cal. 759, 768; *Estate of Holloway,* 195 Cal. 711, 733 [235 P. 1012].)

We are not unmindful of the dictum in *Hellman Commercial T. & S. Bk.* v. *Alden,* 206 Cal. 592, 604 [275 P. 794] (a case not cited or relied upon by appellant, perhaps because the passage quoted was recognized as dictum) that: "It is the settled law of California that an adjudication of the incompetency of a testator is merely *prima facie* evidence of his incapacity to make a valid will." Since the question of capacity to make a will was not involved in the Hellman case the quoted sentence was clearly only dictum as pointed out in *Estate of Worrall,* 53 Cal.App.2d 243, 248 [127 P.2d 593]. That it was not even a carefully considered dictum is evident from the fact that *Estate of Johnson, supra,* 200 Cal. 299, is cited in its support; and the court in the Johnson case in the passage which we have quoted said just the opposite, that such an adjudication of incompetency "is not *prima facie* evidence of incapacity."

Since the Johnson case is the latest ruling of the Supreme Court on an appeal in which the question was actually presented to the court we are bound to follow it.

Appellant seizes upon the expression in the Johnson case that such an adjudication "is evidence of mental condition on the date of the adjudication" and argues that if evidence of mental condition it must be sufficient to take the case to the jury. This is a *non sequitur.* Appellant overlooks the qualifying words "on the date of the adjudication." In our case the hospital records introduced by appellant as part of his case show that the mental condition of the testatrix was not constant from the date of the adjudication. ■ Appellant also overlooks the fact that competent evidence is not necessarily, standing alone, substantial evidence of lack of testamentary capacity. (Cf. 26 Cal.Jur. 667, 668.)

■ The fact, adverted to by appellant, that the signature on the will was scrawling and illegible compared to earlier exemplars of testatrix' signature is at least as readily attributable to physical as mental weakness and cannot constitute substantial evidence of incompetency.

■ There remains the medical testimony produced by appellant. This falls into two classes. Dr. Simon examined the testatrix prior to the hearing in the guardianship proceeding. He testified that on May 28, the only day on which

he saw the testatrix, he found her incompetent. That his testimony had no bearing on the testatrix' testamentary capacity on June 18, 1943, is clear from the following question and answer:

"Q. Did you formulate an opinion at that time as to whether her mental condition would improve, remain static or deteriorate?  A. I don't think—I didn't form any opinion at that time."

Doctors Alden and Catton gave opinion evidence as experts. Neither of them ever saw the testatrix and their testimony was based entirely upon a reading of the hospital records. Without deciding whether their evidence was otherwise sufficient to show testamentary incapacity as distinguished from mental aberration in the medical sense (26 Cal.Jur. 631) an examination of the record makes it clear that they did not accept the hospital records *in toto* as the basis for their expressed opinions, but rather accepted only those portions of the hospital records which supported their opinions and rejected those portions which contradicted their opinions.  For example, although the hospital records contain entries such as "rational but very fretful and restless" and "irrational at times" Dr. Alden testified:

"Q. So with the patient in the hospital and records being made from time to time, and you mentioned noticing in there the nurses noted the patient was rational.  A. Yes.

"Q. Do you include that period when you say she was irrational?  A. Yes, I include that period as being fundamentally irrational as far as being able to think, think anything through that is very complicated."

Likewise, in the face of these entries Dr. Catton testified:  "In my opinion, the irrationality was continuously present under the surface of the mind and continuously present to a degree also on the surface of the mind for a reasonable period of the time previous to the date you mentioned. By reasonable period, I mean days and days, and for a similar period after, and I see nothing in the hospital record, not one single entry at this moment, or hour or day she has returned to any rational behavior."

It is impossible for any expert basing his testimony solely upon other evidence introduced in the case thus to lift himself by his own bootstraps. If his opinion is not based upon facts otherwise proved, or assumes facts contrary to

the only proof, it cannot rise to the dignity of substantial evidence. (*Estate of Gould,* 188 Cal. 353 [205 P. 457] ; *Estate of Purcell,* 164 Cal. 300, 307-8 [128 P. 932] ; *Winthrop* v. *Industrial Acc. Com.,* 213 Cal. 351 [2 P.2d 142] as explained in *Nielsen* v. *Industrial Acc. Com.,* 220 Cal. 118, 121-2 [29 P.2d 852, 30 P.2d 995] and *Alaska Packers Assn.* v. *Industrial Acc. Com.,* 1 Cal.2d 250, 263-4 [34 P.2d 716] ; *Pacific Freight Lines* v. *Industrial Acc. Com.,* 26 Cal.2d 234, 239 [157 P.2d 634] ; *Brant* v. *Retirement Board of S. F.,* 57 Cal.App.2d 721, 733-4 [135 P.2d 396] ; *Mark* v. *Industrial Acc.Com.,* 29 Cal.App.2d 495, 500 [84 P.2d 1071].)

Mindful of the rule, reiterated in *Estate of Teel,* 25 Cal. 2d 520, 527 [154 P.2d 384], that on appeal conflicting evidence must not be weighed, we have refrained from referring to any of respondents' evidence. However, we deem it pertinent to say that both the physician, who attended testatrix in St. Mary's Hospital and under whose supervision the records of that hospital here in evidence were made, and the nurse on duty at the time of the execution of the will, who actually made many of the entries in that record, testified that on June 18, the testatrix was rational and competent. If the evidence of the two doctors who purported to base their testimony on the records, but actually assumed the portions of the records to be inaccurate which contradicted their expressed opinions, was allowed to prevail we would have a situation in direct conflict with the statement quoted by the Supreme Court in *Alaska Packers Assn.* v. *Industrial Acc. Com., supra,* 1 Cal.2d 250, 263 that : " 'there was no true conflict in the evidence where that on one side consists of opinions based on facts not shown by the record to exist, while that on the other side was based upon facts actually shown to exist or rested on the testimony of physicians who had actually treated and examined the patient.' "

Our examination of the record satisfies us that there was no substantial evidence to support the jury's verdict.

The order appealed from is affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied October 10, 1947, and appellant's petition for a hearing by the Supreme Court was denied November 6, 1947. Carter, J., and Schauer, J., voted for a hearing.