[No. B034829. Second Dist., Div. Four. Nov. 16, 1989.]

Conservatorship of the Persons and Estates of E. H. BOOKASTA, et al.
REGINA BOOKASTA, Petitioner and Appellant, v.
RODNEY SWANSON, as Conservator, etc., Objector and Respondent.

## COUNSEL

Dickson, Carlson & Campillo, Hall R. Marston, Robert M. Dato, C. Kenan Oldham and Nancy Lucas Haniotis for Petitioner and Appellant.

Buchalter, Nemer, Fields & Younger, Terence S. Nunan and Anne M. Alaniz for Objector and Respondent.

## OPINION

WOODS (A. M.), P. J.—A conservatorship was established over the persons and estates of Regina Bookasta and her now-deceased husband E. H. Bookasta under provisions of Probate Code section 1801 et seq.[1] Subsequently, the Bookastas petitioned the court under section 1873 to establish their legal capacity to enter into certain transactions which they had undertaken, including revocation of a family trust. The Bookastas also petitioned to terminate the conservatorship. The court denied the petitions and found the Bookastas lacked legal capacity to make a will, invalidating their April 1987 wills. Mrs. Bookasta (appellant) appeals. ■■ ■■ ■■ ■■ She is opposed in this appeal by her conservator.[2]

The relevant facts are as follows: In March 1987, the Bookastas' son, George Bookasta, petitioned for appointment of a conservator over the persons and estates of his mother and father, then aged 91 and 101,

---

[1] All further statutory references are to the Probate Code.

[2] The order is appealable under section 2750, subdivision (*l*). Appellant's brief makes no argument respecting the order denying her petition to terminate the conservatorship. We deem her appeal of that order abandoned.

The conservator argues that the appeal should be dismissed because Mrs. Bookasta lacks legal capacity to employ an attorney to represent her in this proceeding. This argument is without merit. While it is true that a conservatee lacks the legal capacity to enter into contracts (§§ 1870, 1872), other sections of the Probate Code make clear that a conservatee is entitled to legal representation in matters pertaining to the conservatorship. (§ 1470 et seq.)

respectively.[3] The petition asserted that a conservator was needed because the Bookastas had become susceptible to the "undue influence" of their other son, Basil, particularly with regard to the dismissal of a lawsuit which the Bookastas had initiated against Basil to recover certain real property.

The Bookastas filed objections to George's allegations in the petition for conservatorship which they characterized as "false" and asserted that he had exerted undue influence over them. Despite these objections a conservator was appointed on May 13, 1987.

Prior to the appointment of the conservator, on April 16, 1987, the Bookastas executed new wills.[4] On April 27, 1987, they also revoked a trust which they had established in 1984. On July 21, 1987, the Bookastas executed a document which revoked "all trusts of any kind or nature, that we may have made or purported to have made prior to April, 16, 1987, . . ." The trust revocations were necessary to accomplish the Bookastas' testamentary wishes as expressed in the April 16 wills.

The Bookastas then filed two petitions, the first to terminate their conservatorship, and the second for an order broadening their legal capacity as conservatees to enter into certain transactions including the trust revocations. Their conservator filed no objections to the trust revocations but sought to examine the Bookastas' wills to determine whether they were the result of undue influence. The conservator also opposed the petition to terminate the conservatorship.

George Bookasta filed objections to both petitions. He urged the court to make a "careful examination" of both the trust revocations and the April 16 wills, alleging that approval "would be unwise and would invite future litigation."

Although both petitions were set for hearing, the sole issue with which the court concerned itself was the termination of the conservatorship. The only two witnesses called were the then-conservator, Mary Holabird, and a psychiatrist, Ronald C. Smith.

On the subject of undue influence, the conservator testified to a single incident in which she believed Mrs. Bookasta had been influenced by her

---

[3] A temporary conservatorship was established on March 19, 1987, by George's ex parte petition. The Bookastas were apparently unaware of it until some time later.

[4] We take judicial notice of the will of E. H. Bookasta. The will of Regina Bookasta is not before us. Mr. Bookasta's will provides for both of his sons, George and Basil, but excludes all but one of George's children. Evidently, Mrs. Bookasta's will makes a similar disposition of her estate.

son, Basil. The incident involved Mrs. Bookasta's refusal to take the witness oath at a deposition in the Bookastas' action against Basil. Dr. Smith, on the other hand, testified that based on his examination of them he believed that the Bookastas were not susceptible to the undue influence of others. In addition to this testimony, the Bookastas submitted a declaration from the attorney who drafted their wills for them. In the declaration the attorney stated his opinion that both were "fully competent" to plan their estates and that each "indicated a knowledge of their property [and] their relationships to their de[s]cendents . . . ."

On this testimony the court orally denied the Bookastas' petition to terminate the conservatorship but said nothing about their second petition. Subsequently, in a written order, the court denied the second petition finding that the Bookastas lacked "legal capacity" to revoke the trust or to execute the wills. This appeal ensued. We reverse.

I

We first examine the trial court's finding that the Bookastas lacked "legal capacity" to execute the wills on April 16, 1987. Appellant contends that the trial court exceeded its jurisdiction in making this finding.

A court assumes jurisdiction over a will upon a filing of a petition for probate of the will. (§ 8000, subd. (a)(2).) Once jurisdiction exists the will may be contested (§ 8004, subd. (b); *Estate of Visaxis* (1928) 95 Cal.App. 617, 621 [273 P. 165]) for lack of testamentary capacity or undue influence (§ 8252, subd. (a)). Upon such contest "[t]he court shall try and determine any contested issue of fact that affects the validity of the will." (§ 8252, subd. (b).) Since the court below was clearly not acting under the provisions of the Probate Code, no will having been filed as part of these proceedings, we must look elsewhere for the trial court's jurisdiction to invalidate the Bookastas' wills.

We next examine whether the conservatorship statute (§ 1801 et seq.) confers such authority. The conservatorship statute permits a court to "appoint a conservator for a person who [is] neither insane nor incompetent, but who, for a variety of other reasons, need[s] direction in the management of his [or her] affairs." (*Board of Regents* v. *Davis* (1975) 14 Cal.3d 33, 39 [120 Cal.Rptr. 407, 533 P.2d 1047], fn. omitted.) A conservator may be sought where the proposed conservatee is unable to see to his or her own basic physical needs (§ 1801, subd. (a)), or to manage his or her own estate or to do so free from undue influence or fraud (§ 1801, subd. (b)). Hence, conservatorship proceedings involve issues of the proposed conservatee's ability to transact the routine business of life.

The issue of testamentary capacity, by contrast, does not involve such issues. ■ "It is thoroughly established by a series of decisions that: 'Ability to transact important business, or even ordinary business, is not the legal standard of testamentary capacity. . . .' (*Estate of Arnold* [1940] 16 Cal.2d 573, 586 . . . ." (*Estate of Powers* (1947) 81 Cal.App.2d 480, 483-484 [184 P.2d 319]; *Estate of Mann* (1986) 184 Cal.App.3d 593, 605 [229 Cal.Rptr. 225].) Rather, testamentary capacity involves the question of whether, at the time the will is made, the testator " 'has sufficient mental capacity to understand the nature of the act he is doing, to understand and recollect the nature and situation of his property and to remember, and understand his relations to, the persons who have claims upon his bounty and whose interests are affected by the provisions of the instrument.' " (*Estate of Arnold* (1940) 16 Cal.2d 573, 586 [107 P.2d 25], quoting *Estate of Sexton* (1926) 199 Cal. 759, 764 [251 P. 778]; *Estate of Mann, supra,* 184 Cal.App.3d at p. 602.) It is a question, therefore, of the testator's mental state in relation to a specific event, the making of a will. ■ While it is true that the existence of a conservatorship at the time a will was executed may have some bearing on the question of testamentary capacity in a will contest (see, e.g., *Estate of Wochos* (1972) 23 Cal.App.3d 47 [99 Cal.Rptr. 782]), appointment of a conservator is not an adjudication of testamentary incapacity.[5]

This is made clear by the conservatorship statute itself. Section 1872, subdivision (a) states: "Except as otherwise provided in this article, the appointment of a conservator of the estate is an adjudication that the conservatee lacks the legal capacity to enter into or make any transaction that binds or obligates the conservatorship estate." A specific exception to this general rule of legal incapacity, however, is that the conservatee retains "[t]he right to make a will . . . ." (§ 1871, subd. (c).)

The Assembly's Legislative Committee comment to the 1979 version of section 1871 is even more explicit: "Appointment of a conservator is not a determination that the conservatee lacks testamentary capacity. Testamentary capacity is determined by a different standard, which depends upon the soundness of mind." (Legis. committee com., Assem., 54A West's Ann. Prob. Code (1981 ed.) § 1871, pp. 191-192; Deering's Ann. Prob. Code (1981 ed.) § 1871, p. 372.)[6]

---

[5] Significantly, it has been held that the fact that a conservatorship had been established prior to the execution of the decedent's will furnishes only a weak inference of testamentary incapacity. (*Estate of Mann, supra,* 184 Cal.App.3d at p. 605.)

[6] Contrary to the conservator's position, the Law Revision Commission's comment to current section 1871 does not alter the distinction drawn by the earlier annotation but simply restates it. The comment observes: "A conservatee must satisfy [the general] requirements—such as the requirement of Section 6100 that the testator be of 'sound mind'—in order to

Here, the conservator fails to squarely address this issue. Instead, he cites section 1801, subdivision (b), which authorizes appointment of a conservator over the estate of a person unable to "resist fraud or undue influence" as also authorizing the finding of undue influence in connection with execution of a will in the course of conservatorship proceedings. He fails, however, to cite any authority in support of his interpretation of that section. Indeed, the two cases upon which he principally relies, *Watt* v. *Kantel* (1970) 13 Cal.App.3d 249 [91 Cal.Rptr. 449], and *Estate of Baker* (1982) 131 Cal.App.3d 471 [182 Cal.Rptr. 550], discuss the issue of undue influence in the context of a will contest, not conservatorship proceedings.

We conclude that the trial court's finding that the Bookastas lacked legal capacity to execute their wills was error. The court determined the validity of the testamentary act by an inappropriate standard. In so doing, the court acted in excess of its power, and must be reversed.

## II

Appellant also claims that the court erred by denying the Bookasta petition seeking legal capacity to effectuate the trust revocations.

As previously noted, appointment of a conservator is an adjudication that the conservatee lacks legal capacity to enter into all transactions that bind or obligate the conservatee's estate, except those specifically exempted. (§§ 1870-1872.) Under section 1873, subdivision (a), however, the court is given the discretion to "broaden[] or restrict[] the power of the conservatee to enter into such transactions or types of transactions as may be appropriate in the circumstances of the particular conservatee and conservatorship estate."

We conclude that, in view of the relevant circumstances, the trial court abused its discretion in finding that the Bookastas lacked legal capacity to effectuate the trust revocations.

The declaration of the attorney who assisted the Bookastas in their estate planning, including the trust revocations, averred that they were "fully competent" to undertake such planning. Additionally, the then-conservator concluded—at least in her response to the petition below—that the trust revocations were "not of detriment to the Conservatorship estate or the interests of the Conservatee." Finally, contrary to the current conservator's position on appeal, there was no specific showing that the trust revocations

make a valid will. (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (1989 supp. pamp.) § 1871, p. 21; Deering's Ann. Prob. Code (1989 pocket supp.) § 1871, p. 103.)

were the result of undue influence exercised over the Bookastas by their son Basil or any other member of the Bookasta family. The conservator's present statement to that effect is unsupported by any reference to the record. As appellant points out, the trust revocations do not bind or obligate the conservatorship estate, but, rather, enlarge it by adding the trust assets to it.

There is no indication in the record that the court below actually considered these or any other factors relevant to the trust revocation before denying the petition. The trial court therefore abused its discretion by denying the petition to revoke the trusts.

The order of the trial court voiding the 1987 wills and trust revocations is reversed. Appellant to have her costs on appeal.

McClosky, J., and Goertzen, J., concurred.