[No. B221077. Second Dist., Div. Four. June 14, 2011.]

STEPHEN ANDERSEN et al., Plaintiffs and Respondents, v.
PAULINE HUNT, Individually and as Trustee, etc., Defendant and
Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Under California Rules of Court, rules 8.1105 and 8.1110, only the Introduction, parts III.,
III.A., B., C. of the Discussion, and the Disposition are certified for publication.

**COUNSEL**

Law Offices of Marc B. Hankin, Marc B. Hankin; Law Offices of Richard Pech and Richard Pech for Defendant and Appellant.

Law Offices of John A. Belcher and John A. Belcher for Plaintiffs and Respondents.

## OPINION

## SUZUKAWA, J.—

### INTRODUCTION

Plaintiffs and respondents Stephen Andersen (Stephen) and Kathleen Brandt (Kathleen) are the children of decedent Wayne Andersen (Wayne), who died April 28, 2006.[1] Plaintiff John Andersen (John), not a party to this appeal, is Stephen's son and Wayne's grandson. Appellant Pauline Hunt (Pauline) was Wayne's long-term romantic partner. Taylor Profita (Taylor) is Pauline's grandson.

In 1992, Wayne and his wife established a family trust that named Stephen and Kathleen the sole beneficiaries after their parents' deaths. Wayne's wife died in 1993. In 2003, after suffering a stroke, Wayne amended his trust to leave a 60 percent portion of his estate to Pauline, with the remainder going to Stephen, Kathleen, and John. He made subsequent amendments later in 2003 and in 2004, but retained the provision leaving 60 percent of his estate to Pauline.

After Wayne's death in 2006, Stephen and Kathleen brought the present action to, among other things, invalidate the 2003 and 2004 trust amendments and recover funds placed in accounts held jointly by Wayne and Pauline. The probate court found that Wayne lacked capacity to execute the trust amendments, transfer funds from the trust to joint tenancy accounts, and change the beneficiary of his life insurance policy, and that Pauline exerted undue influence with respect to the amendments and transfers.

In the published part of the opinion, we conclude the probate court erred when it evaluated Wayne's capacity to execute the trust amendments by the general standard of capacity set out in Probate Code sections 810 to 812, instead of the standard of testamentary capacity set out in Probate Code section 6100.5.[2] In the unpublished part, we find there is no substantial evidence that Wayne lacked testamentary capacity to execute the 2003 and 2004 trust amendments or that the amendments were the product of Pauline's undue influence. We also determine there is substantial evidence that Wayne lacked capacity to open joint tenancy accounts and to change the beneficiary of his life insurance policy. Thus, we reverse the part of the judgment invalidating the trust amendments and affirm in all other respects.

---

[1] Throughout this opinion, we sometimes refer to Stephen and Kathleen collectively as "petitioners."

[2] All further undesignated statutory references are to the Probate Code.

## STATEMENT OF FACTS AND OF THE CASE*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *The Trial Court Erred in Evaluating Wayne's Capacity to Execute the Trust Amendments by Standards of Contractual Capacity, Not Testamentary Capacity*

The probate court held that Wayne's capacity to execute the trust amendments should be evaluated pursuant to sections 810 to 812 (contractual capacity), rather than section 6100.5 (testamentary capacity). It also found that Wayne lacked contractual capacity as defined by sections 810 to 812.

Pauline contends that the trial court erred in evaluating Wayne's capacity to execute the trust amendments by the standard of contractual capacity, rather than testamentary capacity. She also contends substantial evidence does not support the conclusion that Wayne lacked testamentary capacity to execute the trust amendments. For the following reasons, we agree.

A. *Testamentary Capacity*

Section 6100.5 sets out the standard for testamentary capacity. It provides that a person is not mentally competent to make a will if at the time of making the will, either of the following is true:

"(1) The individual does not have sufficient mental capacity to be able to (A) understand the nature of the testamentary act, (B) understand and recollect the nature and situation of the individual's property, or (C) remember and understand the individual's relations to living descendants, spouse, and parents, and those whose interests are affected by the will.

"(2) The individual suffers from a mental disorder with symptoms including delusions or hallucinations, which delusions or hallucinations result in the

---

*See footnote, *ante*, page 722.

individual's devising property in a way which, except for the existence of the delusions or hallucinations, the individual would not have done." (§ 6100.5, subd. (a).)

■ " 'It is thoroughly established by a series of decisions that: "Ability to transact important business, or even ordinary business, is not the legal standard of testamentary capacity. . . ." (*Estate of Arnold* [(1940)] 16 Cal.2d 573, 586 [107 P.2d 25][)] . . . .' (*Estate of Powers* (1947) 81 Cal.App.2d 480, 483–484 [184 P.2d 319]; *Estate of Mann* (1986) 184 Cal.App.3d 593, 605 [229 Cal.Rptr. 225].) Rather, testamentary capacity involves the question of whether, at the time the will is made, the testator ' "has sufficient mental capacity to understand the nature of the act he is doing, to understand and recollect the nature and situation of his property and to remember, and understand his relations to, the persons who have claims upon his bounty and whose interests are affected by the provisions of the instrument." ' (*Estate of Arnold*[, *supra*,] 16 Cal.2d [at p.] 586, quoting *Estate of Sexton* (1926) 199 Cal. 759, 764 [251 P. 778]; *Estate of Mann, supra*, 184 Cal.App.3d at p. 602.) It is a question, therefore, of the testator's mental state in relation to a specific event, the making of a will." (*Conservatorship of Bookasta* (1989) 216 Cal.App.3d 445, 450 [265 Cal.Rptr. 1].)

■ "It is well established that 'old age or forgetfulness, eccentricities or mental feebleness or confusion at various times of a party making a will are not enough in themselves to warrant a holding that the testator lacked testamentary capacity.' (*Estate of Wynne* (1966) 239 Cal.App.2d 369, 374 [48 Cal.Rptr. 656], citing *Estate of Sanderson* (1959) 171 Cal.App.2d 651, 660 [341 P.2d 358] and *Estate of Lingenfelter* (1952) 38 Cal.2d 571, 581 [241 P.2d 990].) 'It has been held over and over in this state that old age, feebleness, forgetfulness, filthy personal habits, personal eccentricities, failure to recognize old friends or relatives, physical disability, absent-mindedness and mental confusion do not furnish grounds for holding that a testator lacked testamentary capacity.' (*Estate of Selb* (1948) 84 Cal.App.2d 46, 49 [190 P.2d 277].) ■ Nor does the mere fact that the testator is under a guardianship support a finding of lack of testamentary capacity without evidence that the incompetence continues at the time of the will's execution. (*Estate of Nelson* (1964) 227 Cal.App.2d 42 [38 Cal.Rptr. 459]; *Estate of Wochos* (1972) 23 Cal.App.3d 47 [99 Cal.Rptr. 782].)

■ "It must be remembered, in this connection, that '[w]hen one has a mental disorder in which there are lucid periods, it is presumed that his will has been made during a time of lucidity.' (*Estate of Goetz* (1967) 253 Cal.App.2d 107, 114 [61 Cal.Rptr. 181].) . . . Thus a finding of lack of testamentary capacity can be supported only if the presumption of execution during a lucid period is overcome." (*Estate of Mann, supra*, 184 Cal.App.3d at pp. 603–604.)

B. *Capacity Generally*

Sections 810 to 813 set out the standard for capacity to make various kinds of decisions, transact business, and enter contracts. Section 810 provides:

"(a) For purposes of this part, there shall exist a rebuttable presumption affecting the burden of proof that all persons have the capacity to make decisions and to be responsible for their acts or decisions.

"(b) A person who has a mental or physical disorder may still be capable of contracting, conveying, marrying, making medical decisions, executing wills or trusts, and performing other actions.

"(c) A judicial determination that a person is totally without understanding, or is of unsound mind, or suffers from one or more mental deficits so substantial that, under the circumstances, the person should be deemed to lack the legal capacity to perform a specific act, should be based on evidence of a deficit in one or more of the person's mental functions rather than on a diagnosis of a person's mental or physical disorder."

Section 811 sets out the findings necessary to support a conclusion of lack of capacity, as follows:

"(a) A determination that a person is of unsound mind or lacks the capacity to make a decision or do a certain act, including, but not limited to, the incapacity to contract, to make a conveyance, to marry, to make medical decisions, to execute wills, or to execute trusts, shall be supported by evidence of a deficit in at least one of the following mental functions, subject to subdivision (b), and evidence of a correlation between the deficit or deficits and the decision or acts in question:

"(1) Alertness and attention, including, but not limited to, the following: [¶] (A) Level of arousal or consciousness. [¶] (B) Orientation to time, place, person, and situation. [¶] (C) Ability to attend and concentrate.

"(2) Information processing, including, but not limited to, the following: [¶] (A) Short- and long-term memory, including immediate recall. [¶] (B) Ability to understand or communicate with others, either verbally or otherwise. [¶] (C) Recognition of familiar objects and familiar persons. [¶] (D) Ability to understand and appreciate quantities. [¶] (E) Ability to reason using abstract concepts. [¶] (F) Ability to plan, organize, and carry out actions in one's own rational self-interest. [¶] (G) Ability to reason logically.

"(3) Thought processes. Deficits in these functions may be demonstrated by the presence of the following: [¶] (A) Severely disorganized thinking. [¶] (B) Hallucinations. [¶] (C) Delusions. [¶] (D) Uncontrollable, repetitive, or intrusive thoughts.

"(4) Ability to modulate mood and affect. Deficits in this ability may be demonstrated by the presence of a pervasive and persistent or recurrent state of euphoria, anger, anxiety, fear, panic, depression, hopelessness or despair, helplessness, apathy or indifference, that is inappropriate in degree to the individual's circumstances.

"(b) A deficit in the mental functions listed above may be considered only if the deficit, by itself or in combination with one or more other mental function deficits, significantly impairs the person's ability to understand and appreciate the consequences of his or her actions *with regard to the type of act or decision in question.*

"(c) In determining whether a person suffers from a deficit in mental function so substantial that the person lacks the capacity to do a certain act, the court may take into consideration the frequency, severity, and duration of periods of impairment. . . ." (Italics added.)

Section 812 provides: "Except where otherwise provided by law, including, but not limited to, Section 813 and the statutory and decisional law of testamentary capacity, a person lacks the capacity to make a decision unless the person has the ability to communicate verbally, or by any other means, the decision, and to understand and appreciate, to the extent relevant, all of the following: [¶] (a) The rights, duties, and responsibilities created by, or affected by the decision. [¶] (b) The probable consequences for the decision-maker and, where appropriate, the persons affected by the decision. [¶] (c) The significant risks, benefits, and reasonable alternatives involved in the decision."

    C.   *Wayne's Capacity to Execute the Disputed Trust Amendments Should Have Been Evaluated by the Standard of Testamentary Capacity (Section 6100.5)*

As the cases cited by the parties make clear, California courts have not applied consistent standards in evaluating capacity to make or amend a trust. In *Goodman v. Zimmerman* (1994) 25 Cal.App.4th 1667, 1673–1679 [32 Cal.Rptr.2d 419], cited by Pauline, the court applied section 6100.5's standard for testamentary capacity to evaluate a decedent's capacity to execute a new will and trust amendment. In contrast, in *Walton v. Bank of California* (1963) 218 Cal.App.2d 527, 541 [32 Cal.Rptr. 856], cited by Stephen and

Kathleen, the court applied a higher standard to evaluate capacity to enter an irrevocable inter vivos trust, stating that "A person lacking capacity to make an ordinary transfer of property has no capacity to create an *inter vivos* trust." (See also *Estate of Bodger* (1955) 130 Cal.App.2d 416, 424 [279 P.2d 61] ["A declaration of trust constitutes a contract between the trustor and the trustee for the benefit of a third party."].) In these cases, however, the proper standard by which to evaluate capacity does not appear to have been in dispute. The cases therefore offer little assistance in resolving the question we now address—the measure by which a court should evaluate a decedent's capacity to make an after-death transfer by trust. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1097 [95 Cal.Rptr.2d 198, 997 P.2d 511] ["language of an opinion must be construed with reference to the facts presented by the case; the positive authority of a decision is coextensive only with such facts"]; *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 127 [92 Cal.Rptr.3d 595, 205 P.3d 1047] [" ' "[i]t is axiomatic that cases are not authority for propositions not considered" ' "].)

As Stephen and Kathleen correctly note, section 6100.5 defines mental competency to make a "will," not a testamentary transfer more generally. Thus, they appear to be correct that Wayne's capacity must be evaluated under sections 810 to 812, not section 6100.5.

■  Stephen and Kathleen err, however, in suggesting that sections 810 to 812 set out a single standard of "contractual capacity." They do not. To the contrary, section 811, subdivision (a) provides that a determination that a person lacks capacity to make a decision or do a certain act, including without limitation "to contract, . . . to execute wills, or to execute trusts," must be supported by evidence of a deficit in one of the statutorily identified mental functions *and evidence of a correlation between the deficit and the decision or act in question.* Section 811, subdivision (b) contains similar language, stating that a deficit in one of the statutorily defined mental functions may be considered *only* if it significantly impairs the person's ability to appreciate the consequences of his or her actions *with regard to the type or act or decision in question.* And section 812 provides that a person lacks capacity to make a decision only if he or she cannot appreciate the rights, duties, consequences, risks and benefits *"involved in the decision."* (Italics added.) Accordingly, sections 810 to 812 do not set out a single standard for contractual capacity, but rather provide that capacity to do a variety of acts, including to contract, make a will, or execute a trust, must be evaluated by a person's ability to appreciate the consequences *of the particular act he or she wishes to take.* More complicated decisions and transactions thus would appear to require greater mental function; less complicated decisions and transactions would appear to require less mental function.

■ When determining whether a trustor had capacity to execute a trust amendment that, in its content and complexity, closely resembles a will or codicil, we believe it is appropriate to look to section 6100.5 to determine when a person's mental deficits are sufficient to allow a court to conclude that the person lacks the ability "to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question." (§ 811, subd. (b).) In other words, while section 6100.5 is not directly applicable to determine competency to make or amend a trust, it is made applicable through section 811 to trusts or trust amendments that are analogous to wills or codicils.

In the present case, while the original trust document is complex, the amendments are not.[5] Indeed, none of the contested amendments does more than provide the percentages of the trust estate Wayne wished each beneficiary to receive. The May 28, 2003 amendment provided that Pauline was to receive 60 percent of the trust residue, and Stephen, Kathleen, and John were to receive the remaining 40 percent in equal shares; the November 18, 2003 amendment specified the same 60 percent/40 percent allocation if Wayne predeceased Pauline, but provided that if Pauline died first, Taylor should receive a portion of the trust assets; and the July 6, 2004 amendment eliminated John as a beneficiary, providing that "Steve will have the portion that had been set aside for his son."

In view of the amendments' simplicity and testamentary nature, we conclude that they are indistinguishable from a will or codicil and, thus, Wayne's capacity to execute the amendments should have been evaluated pursuant to the standard of testamentary capacity articulated in section 6100.5. The trial court erred in evaluating Wayne's capacity under a different, higher standard of mental functioning.

D.   *There Is No Substantial Evidence That Wayne Lacked Testamentary Capacity When He Executed the Trust Amendments*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV., V.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[5] Stephen and Kathleen do not seriously contend otherwise. While they urge that the Andersen Family Trust "is a complicated document spanning 16 pages" that contains "numerous patent and latent ambiguities," they make no argument that the amendments (as opposed to the original trust document) are complex.

[*] See footnote, *ante*, page 722.

## DISPOSITION

The part of the judgment invalidating the trust amendments is reversed, and the probate court is directed to enter a new and different judgment affirming the validity of the trust amendments. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

Epstein, P. J., and Manella, J., concurred.

A petition for a rehearing was denied July 6, 2011, and respondents' petition for review by the Supreme Court was denied August 24, 2011, S195035.