Filed 12/5/23  Falb v. Scherer CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHELE FALB, | |
| Plaintiff and Appellant, | G062731 |
| v. | (Super. Ct. No. TRUPS1900250) |
| LYNNE SCHERER, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Rafael A. Arreola, Judge.  (Retired judge of the San Diego Super. Ct., assigned by the Chief Justice pursuant to Cal. Const., art. VI, § 6.)  Affirmed.

Law Offices of Robert F. Schauer, Robert F. Schauer and Noah K. McCall for Plaintiff and Appellant.

Keehn Law Professional Corporation and Carla B. Keehn for Defendant and Respondent.

During their marriage, Felice DiBlasi Verona (Felice) and James Verona (James) created a revocable trust.[1] When the first of them died, the survivor was to divide that trust into two trusts — one of which would become irrevocable — unless the total value of the original trust's assets was less than the federal tax-free amount. When James died before Felice, the total trust assets were less than the federal tax-free amount, so the trust was not divided. Felice later changed the beneficiaries of the original revocable trust, and then created a new trust into which she placed the assets of the original trust. When Felice died, all the assets passed to her children, with nothing passing to James's children.

While James was alive, he withdrew half the money from bank accounts held jointly with Felice and transferred that money to bank accounts held jointly with his daughter, appellant Michele Falb. After James's death, Falb held onto the remaining money.

We hold (1) Felice had the authority and the capacity to amend the original trust after James's death, to establish a new trust, and to transfer the assets to the new trust; (2) the original trust authorized Felice not to divide the trust assets into two trusts after James's death, given the value of the trust's assets at that time; and (3) Falb committed financial elder abuse against Felice by taking and assisting James in taking and holding half of the money from the bank accounts belonging jointly to Felice and James, hiding from Felice the only executed copy of the trust document, taking personal property belonging to Felice as the surviving trustee, and tying up the trust's real property in litigation and preventing Felice from selling it. We therefore affirm the judgment of the trial court.

---

[1] We refer to Felice and James by their first names to avoid confusion. We intend no disrespect.

2

# FACTUAL BACKGROUND

## I.

### THE PARTIES AND THE FAMILY TRUST

Felice and James married in 1978.  Felice and James had no children of their marriage, but each had children from their previous marriages.  Appellant Falb was James's daughter from a previous marriage, and respondent Lynne Scherer (Scherer) was Felice's daughter from a previous marriage.  James died February 28, 2018.  Felice died June 10, 2020, during the pendency of this matter.

In October 2008, Felice and James created the Verona Family Revocable Trust (the Family Trust).  Felice and James were the initial trustees of the Family Trust.  Falb and Scherer were named as co-successor trustees.

The Family Trust provides that upon the death of the first-to-die spouse, the surviving trustee must divide the Family Trust property into two trusts (Trust A or the Survivor's Trust, and Trust B or the Unified Credit Trust), subject to one important caveat in section 5.02:  "Should, however, at the death of the first Trustor the newly appraised value of the assets be less than the maximum Federal tax-free amount, the Trustee *shall not divide* the assets into two trusts."  (Italics added.)

After James's death, Felice executed a first amendment to the Family Trust by which she named Scherer as the co-trustee and removed Falb and Falb's brother, Scott Verona, from consideration as successor trustees.  Felice also exercised a power of appointment by which the beneficiaries of the Family Trust were changed to Scherer and Felice's son, Ronald DiBlasi, and their descendants by right of representation; Falb, her siblings, and their descendants were removed as beneficiaries.

## II.

### REAL PROPERTY

At the time Felice and James married, Felice owned a piece of real property located on Deodar Street in Ontario, California, as an unmarried woman (the Property).

3

In May 2008, Felice transferred the Property by grant deed to herself and James as joint tenants. After creating the Family Trust, Felice and James transferred the Property by trust transfer deed to themselves as trustees of the Family Trust.

After James's death, Felice created the Felice Verona Revocable Trust (the Individual Trust) in July 2019. Felice executed three deeds in July 2019 transferring the Property, conveying the Property first to herself as trustee of the Family Trust, then to herself as her sole and separate property, and then to herself as trustee of the Individual Trust.

### III.

### BANK ACCOUNTS

At the relevant times, Felice and James had four bank accounts: (1) US Bank checking account ending 6578, held in joint tenancy; (2) US Bank money market account ending 2001, held in joint tenancy; (3) Chase Bank checking account ending 5875, held as trustees of the Family Trust; and (4) Chase Bank savings account ending 5575, held as trustees of the Family Trust. In October 2017, James withdrew half of the balance from each of these bank accounts. The total withdrawn from the bank accounts was $291,569.26. Falb drove James to both banks to make those withdrawals. On the same day, Falb and James opened a joint account at Chase Bank into which they deposited all of the funds withdrawn from Felice and James's four bank accounts.

In April 2018, after James's death, Falb had two cashier's checks issued to herself from the joint account at Chase Bank in the total amount of $285,474.30. She deposited this money into a new account at Union Bank in her own name.

### IV.

### OTHER PERSONAL PROPERTY

In May 2019, after James's death, knowing that Felice was in Colorado, Falb hired a locksmith to enter the Property and rekey it. She later rented a small truck to

4

remove what she claimed was her personal property from the Property. She took a mechanical bed, three flat screen televisions, a typewriter, and a sewing machine.[2]

## V.

### SIGNED COPY OF THE FAMILY TRUST

After James's death, Felice was unable to locate a signed copy of the Family Trust and was therefore unable to administer the Family Trust. In March 2018, Scherer asked Falb if she was in possession of the Family Trust document; Falb claimed she was not. Falb claimed she found the Family Trust document in May 2019 in her garage in a box of books given to her by James in late 2017.

## VI.

### PROCEDURAL HISTORY

Falb filed a petition in November 2019 to remove Felice as trustee. Felice died in June 2020. Falb filed a first amended petition in August 2020, asking the court to (1) determine who should serve as successor trustee, (2) order the Family Trust assets, including the Property, not to be sold, (3) void the exercise of power of appointment and the first amendment to the Family Trust signed by Felice in July 2019 due to Felice's alleged lack of capacity, and (4) void all deeds regarding the Property signed by Felice in July 2019 due to Felice's alleged lack of capacity. Scherer filed a cross-petition in February 2021 seeking damages from Falb for financial elder abuse, undue influence, recovery of Family Trust assets, a surcharge for attorney fees and double damages, and imposition of a constructive trust.

A bench trial was conducted in October 2021. The court issued a two-page, handwritten decision after trial on October 29, 2021. In that decision, the court made the

---

[2] The trial court also found Falb took two pianos, an additional television, and "more items that were presented at trial." The specific nature of the personal property removed from the Property is not material to the resolution of the issues in this appeal.

following findings: (1) Falb's testimony was not credible;[3] (2) after James's death, Felice became the sole trustor and trustee of the Family Trust; (3) Felice had the legal capacity to create a new trust and transfer the Property to that new trust; (4) Falb had no right to enter the Property or take any personal property from it; and (5) although James had the right while living to take money from the Family Trust for his living expenses, he was required to do so in a reasonable manner, and he did not have the right to take about half of the money from the bank accounts and give most of that money to Falb. The court ordered Falb to return the money from the bank accounts to the Family Trust or to the Individual Trust and to not use that money for any purpose (including but not limited to litigation expenses); imposed a constructive trust on the bank account money; and denied without prejudice Scherer's requests for punitive damages, attorney fees, and double damages. The court also ordered Scherer's counsel to prepare findings and orders for the court's signature.

Falb timely requested a statement of decision. The court issued a tentative statement of decision on November 19, 2021, which merely restated the decision after trial in typewritten form. Falb filed objections to the tentative statement of decision.

Scherer then submitted a proposed supplement to the statement of decision to which Falb objected. After a hearing on Falb's objections, Scherer filed a revised proposed supplement to the statement of decision, to which Falb again objected.

The trial court signed the revised proposed supplement to the statement of decision, with minor interlineated changes (the supplement). In the supplement the trial court found: (1) Falb took, appropriated, and assisted James in taking $291,569.26 from joint accounts held by James and Felice, and later transferred that money into her own

---

[3] On appeal, we may not disturb the trial court's finding Falb was not credible. (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 804–805 [witness credibility is the exclusive province of the trier of fact].)

6

account; (2) Falb took and hid the only executed copy of the Family Trust; (3) Falb took, appropriated, hid, and obtained numerous items of personal property from the Property, including two pianos and four flatscreen televisions; (4) Falb prevented Felice from selling the Property; (5) after James died, Falb took and appropriated to herself the money taken from James and Felice's joint accounts; (6) given the language of the Family Trust and the size of the Family Trust at James's death, the Family Trust was not divided into A and B trusts; (7) Felice had testamentary capacity to create the Individual Trust and to transfer the Property to the Individual Trust in July 2019; (8) Falb failed to rebut the presumption of Felice's testamentary capacity; (9) the testimony of the attorney who drafted the Individual Trust as to Felice's capacity to make financial decisions was entitled to substantial weight; and (10) by means of the Individual Trust, Felice left the Property to her surviving children, Scherer and Ronald DiBlasi. The supplement noted: "These supplemental findings do not change the court's tentative statement of decision and the initial findings, rulings and orders shall become the final decisions and orders of this court." (The decision after trial, tentative statement of decision and the supplement will hereafter be referred to collectively as the Statement of Decision.)

On the same day, the court entered an order taxing a portion of Scherer's costs, and entered judgment in favor of Scherer and against Falb in the amount of $300,087. Falb filed a notice of appeal from the judgment on March 1, 2022. On March 24, 2022, Falb filed a motion for a new trial, which was denied.

## DISCUSSION

### I.

### STANDARDS OF REVIEW

"When the court announces its tentative decision, a party may, under [Code of Civil Procedure] section 632, request the court to issue a statement of decision explaining the basis of its determination, and shall specify the issues on which the party is

7

requesting the statement; following such a request, the party may make proposals relating to the contents of the statement.  Thereafter, under [Code of Civil Procedure] section 634, the party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133, fns. omitted.)  In order to avoid the doctrine of implied findings, litigants must bring ambiguities and omissions in the statement of decision's factual findings to the trial court's attention.  If omissions or ambiguities in the statement of decision's factual findings are timely brought to the court's attention, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634.)  "Failure to determine a material issue in a statement of decision can, in some circumstances, be reversible error if there is evidence that would support a finding in the opposing party's favor." (*Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 536.)  "'[I]f the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings.'" (*Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 745.)

The interpretation of a trust instrument is a question of law which we review de novo, as there is no conflict or question of the credibility of extrinsic evidence in this case. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 604; *McGee v. State Dept. of Health Care Services* (2023) 91 Cal.App.5th 1161, 1169.)

II.

THE TRIAL COURT DID NOT ERR IN CONCLUDING THE MONEY JAMES TOOK FROM HIS JOINT BANK ACCOUNTS WITH FELICE MUST BE RETURNED TO THE FAMILY TRUST

A.  *Family Trust Section 5.02*

Section 5.02 of the Family Trust provides that upon the death of the first-to-die spouse, the trustee must immediately divide the Family Trust property into two trusts,

8

subject to one important caveat: "Should, however, at the death of the first Trustor the newly appraised value of the assets be less than the maximum Federal tax-free amount, the Trustee *shall not divide* the assets into two trusts." (Italics added.)

At trial, Falb agreed the total value of the Family Trust when James died was less than $6 million. The trial court took judicial notice the federal tax exemption for tax year 2018 was $5.6 million per individual. Therefore, as the surviving trustor and trustee, Felice was not required to split the Family Trust into a Survivor's Trust and a Unified Credit Trust at James's death or otherwise divide the Family Trust's assets. Because the Family Trust remained intact, no part of the Family Trust became irrevocable; section 2.03(D) of the Family Trust provides the Unified Credit Trust would become irrevocable after creation following the death of the first-to-die spouse, but under section 5.02 of the Family Trust no Unified Credit Trust was ever created. Therefore, Felice was entitled to amend the entirety of the Family Trust to change the beneficiaries and to transfer the Family Trust's assets — including the Property — to herself as an individual and/or to the Individual Trust.

Falb does not mention, much less address, section 5.02 of the Family Trust in her appellate briefs. Instead, Falb focuses on sections 5.01 and 7.04 of the Family Trust. Section 5.01 provides: "Upon the death of either Trustor, the Trustee shall distribute immediately the decedent's separate property according to the terms of Article 7.04, infra." Section 7.04 provides, "Upon the death of the Surviving Trustor, Trustee shall divide the entire trust estate, including additions thereto by way of pour-over from the Wills of James R. Verona and Felice Verona, or from any other source" one-half to James's children and one-half to Felice's children. (Some capitalization omitted.) Neither of those sections is applicable in this case. Section 5.01 applies only to separate property. Although section 1.01 of the Family Trust provides separate property transferred by each trustor will retain its character as such, neither trustor identified any separate property in the schedules to the Family Trust and no evidence identifying any

9

separate property was presented at trial. This leaves us with the necessary conclusion there was no separate property to be distributed under section 5.01. As for section 7.04, by the time Felice — the surviving trustor — died, the Family Trust had been amended to remove James's children as beneficiaries.

Falb incorrectly argues on appeal the trial court ruled Felice and James held the Property as joint tenants and it therefore became Felice's sole property via the right of survivorship. Before James's death, the Property was held by Felice and James as trustees of the Family Trust. After James's death, Felice became the sole trustee and owned the Property in that capacity. As the sole trustee, given the applicability of section 5.02 of the Family Trust that it "shall not" be divided into two separate trusts, Felice had the sole authority to amend the Family Trust and to exercise a general power of appointment changing the beneficiaries. Nothing in the Statement of Decision presumes otherwise.

B. *Felice's Mental Capacity*

The trial court found Felice had the legal capacity to exercise the power of appointment, amend the Family Trust, execute the Individual Trust, and transfer the Property to the Individual Trust, under either Probate Code section 6100.5 and *Andersen v. Hunt* (2011) 196 Cal.App.4th 722, or under Probate Code sections 810 through 812. Substantial evidence supports the trial court's findings.

In *Andersen v. Hunt, supra*, 196 Cal.App.4th at page 731, the court held that when a trust document is more like a will than a legal contract in its complexity, it is appropriate to apply the standard for capacity to execute a will, as set forth in Probate Code section 6100.5, rather than the general, higher standard for legal capacity, as set forth in Probate Code sections 810 through 812. Under Probate Code section 6100.5, a person may be found to lack the mental capacity to make a will only if they (1) lack the mental capacity to understand the nature of the testamentary act, the nature and situation of their property, or their relation to those whose interests are affected by the

10

testamentary document, or (2) suffer delusions or hallucinations that cause them to devise their property in an unnatural way.

Section 810 of the Probate Code creates a rebuttable presumption that everyone has the capacity to make their own decisions, including testamentary decisions, even if they have been diagnosed with a mental or physical disorder. A court's determination an individual lacks testamentary capacity requires evidence of a deficit in mental function as well as evidence of a correlation between that deficit and the testamentary act if the deficit "significantly impairs the person's ability to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question." (Prob. Code, § 811.) Under Probate Code section 812, a person lacks capacity to make a decision unless they have the ability to communicate the decision and to understand the rights and duties created by the decision, the consequences for the decisionmaker, and the risks, benefits, and alternatives involved in the decision.

Dr. Amanda Goldstein testified as an expert witness for Falb. She reviewed Felice's medical records and opined, based on those records and an interview of Falb, Felice did not meet the criteria of testamentary capacity on July 17, 2019, and July 23, 2019, notwithstanding Goldstein's opinion Felice then knew she did not want her stepchildren to inherit anything. However, Goldstein never met or treated Felice, and the trial court was not required to give credence to her opinion. "An expert's opinion is only as good as the facts on which it is built." (*Shiffer v. CBS Corp.* (2015) 240 Cal.App.4th 246, 253–254.)[4]

_____

[4] Falb also offered evidence from several friends and family members who testified to Felice's forgetfulness, anxiety, compulsive desire to leave Colorado, and changes in behavior and mood. None of this testimony was sufficient, alone or together, to rebut the presumption of legal capacity. As the trial court noted, "The presumption of testamentary capacity cannot be rebutted by showing a few isolated acts of mental irregularities, isolated acts, departures from the normal, unless they bear directly on . . . and influence the testamentary act. *Estate of Woehr* (1958) 166 Cal.App.2d 4, 17." (See *Estate of Lingenfelter* (1952) 38 Cal.2d 571, 581.)

11

Barbara Cashman, an attorney in Colorado, testified Felice retained her in July 2019 for estate planning guidance and assistance. Cashman testified Felice was aware of the Property as real property she owned in California, and she desired to leave all her property her property to her children. Cashman drafted a first amendment to the Family Trust naming Scherer as Felice's co-trustee, and removing Falb and her brother Scott Verona from consideration as successor trustees. Cashman also drafted an exercise of general power of appointment, by which Felice changed the beneficiaries of the Family Trust so that only Scherer and her brother Ronald DiBlasi (or their descendants by representation) would be the beneficiaries of the Family Trust after Felice's death. Cashman also drafted a new revocable trust — the Individual Trust — consistent with Felice's stated desires.

Cashman met with Felice four or five times. Felice provided Cashman with information about her property and who she wanted to be the beneficiaries of the Individual Trust. Scherer did not provide Cashman with a medical diagnosis for Felice; Cashman testified she would have made her own assessment or evaluation of Felice's capacity even if Scherer had done so. Cashman testified: "Now, Ms. Verona, as I said, was a feisty little old lady. She knew what she wanted. She might not have been as clear and had all the cognitive capacity that she once had, but that's, in fact, very common. And it's also very common for adult children to tell me, 'Well, you know, Dad isn't what he used to be.' Well, you know what? Dad can still hire me, or mom can still hire me as their counsel and direct me about what changes they want to make." The trial court gave "substantial weight" to Cashman's testimony.

In summary, Cashman testified Felice had the capacity to make financial decisions, to execute the various documents related to the Family Trust, to execute the Individual Trust, and to execute the various deeds for the Property. None of Falb's witnesses provided evidence of the three criteria under Probate Code section 6100.5, or

12

evidence sufficient to rebut the presumption of capacity under Probate Code sections 810 through 812.

## II.

### SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDINGS REGARDING FINANCIAL ELDER ABUSE

Scherer's cross-petition alleged Falb committed financial elder abuse against Felice by assisting James in removing money from James and Felice's bank accounts, hiding the original executed copy of the Family Trust, taking personal property from the Property, and preventing Felice from selling the Property by tying it up in litigation. The cross-petition also alleged Falb exercised undue influence against James to obtain money from the couple's bank accounts.

Financial abuse of an elder occurs when a person deprives the elder of a property right or assists in depriving the elder of a property right, either (1) for a wrongful use or with intent to defraud, or both, or (2) by undue influence. (Welf. & Inst. Code, § 15610.30, subds. (a), (c); see *id.*, § 15610.70.) If the person knows depriving the elder of the property right "is likely to be harmful to the elder," they may be deemed to have taken the property for a wrongful use. (*Id.*, § 15610.30, subd. (b).)

Falb argues the judgment must be reversed because the Statement of Decision fails to state facts to support the judgment against her for financial elder abuse.[5] While the Statement of Decision does not make a finding Falb committed financial elder abuse, it contains findings on which such a finding could be based. Only if the evidence is sufficient to support a contrary finding in Falb's favor "'which would have the effect of

[5] Scherer argues Falb forfeited this argument on appeal because she failed to object to the Statement of Decision based on a failure to address financial elder abuse. While we disagree the failure to raise an issue in objections to a statement of decision *forfeits* the issue on appeal, we agree it brings into play the doctrine of implied findings. Falb's objection to the proposed supplemental statement of decision filed January 24, 2022 does raise the issue of whether Falb did anything improper in assisting James withdraw money from James and Felice's bank accounts.

13

countervailing or destroying other findings'" (*Sperber v. Robinson, supra*, 26 Cal.App.4th at p. 745) is reversal required.

Scherer suggests in her respondent's brief the trial court never ruled on the petition for financial elder abuse. Neither the Statement of Decision nor the judgment specifically mentions financial elder abuse. If financial elder abuse is proven, Probate Code section 859 imposes liability for twice the value of the recovered property. Additionally, Welfare and Institutions Code section 15657.5, subdivision (a) makes an award of attorney fees and costs against a defendant mandatory when financial elder abuse is proved.

The decision after trial and the Statement of Decision deny attorney fees. Yet the trial court awarded Scherer judgment against Falb in the amount of the money taken from the bank accounts (plus costs in the matter) and imposed a constructive trust over those funds. The trial court's award is indicative of a finding of financial abuse and it was then appropriate for the trial court to impose a constructive trust on the money. The trial court could also order Falb to return the money to the Family Trust or the Individual Trust. Therefore, we conclude the trial court did rule on the cross-petition for financial elder abuse, although it did not state so explicitly.

Additionally, the trial court found James, assisted by Falb, took and appropriated money from his joint accounts with Felice. The court also found Family Code section 721 applied in this case: "[I]n transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary

14

relationship subject to the same rights and duties of nonmarital business partners." (Fam. Code, § 721, subd. (b).)[6]

Falb testified the money removed from the bank accounts was intended to pay for James's care. Even if we assume the truth of that testimony despite the trial court's finding Falb was not credible, the sum of the checks and cash withdrawals Falb testified were made for James's care totaled less than $12,000. The money withdrawn from the joint bank accounts in excess of this amount was not used for James's care and was not returned to James and Felice.

In any event, substantial evidence supports judgment in Scherer's favor on the financial elder abuse claim. The trial court made findings that Falb took and "appropriated" the money in question by assisting James in withdrawing the money. To appropriate means "to take without permission." (Webster's 3d New Internat. Dict. (1986) p. 106.)[7] The court also found Falb had taken and hidden the only executed copy of the Family Trust; taken, appropriated, and hidden items of personal property; and prevented Felice from selling the Property by pursuing the probate petition. These findings were sufficient to support a conclusion that Falb's conduct was undertaken for a wrongful purpose within the meaning of Welfare and Institutions Code section 15610.30, subdivision (b).

---

[6]  There was no cause of action asserted against James for breach of fiduciary duty. The duties imposed by Family Code section 721, however, apply even in the absence of a cause of action for such a breach.

[7]  In her appellate briefs, Falb cites her testimony that she did not influence James's decisions to withdraw the money or open the joint bank accounts with her; rather, the decision was James's alone and his purpose was to pay for his care with his half of the Family Trust's assets. As discussed *ante*, we review the judgment for substantial evidence. Falb fails to cite and explain why the evidence supporting the judgment is insufficient. (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.) Additionally, the trial court found Falb not to be credible.

DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.